MARYLAND-NATIONAL CAPITAL PARK AND
PLANNING COMMISSION *v.* SILKOR DE-
VELOPMENT CORPORATION

[No. 253, September Term, 1966.]

*Decided May 3, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Harry W. Lerch* and *D. Warren Donohue* for appellant.

*Joseph P. Blocher,* with whom were *Linowes & Blocher* and *R. Robert Linowes* on the brief for appellee.

FINAN, J., delivered the opinion of the Court.

On September 17, 1965, plaintiff-appellee, Silkor Development Corporation, filed an application for approval of a preliminary plan of a subdivision with the defendant-appellant, the Montgomery County Planning Board of the Maryland-National Capital Park and Planning Commission. The preliminary plat proposed subdividing appellee's land, zoned R-R (rural residential), known as "Rock Creek Highlands," Section 1, located in Montgomery County into 138 lots (137 building lots and one outlot). The appellant referred copies of the preliminary plan to various State and local governmental agencies pursuant to § 104-24 (a), Mont. Co. Code (1965) (Ord. 4-115, § 1, Laws of Mont. Co. 1962, adopted Oct. 17, 1961). Each agency to which the preliminary plan was referred either approved it formally or by default as provided in § 104-24 (b), which provides that if the agency to which the plan is referred makes no recommendation to the appellant within 30 days of referral the agency shall be deemed to have approved the plan. The appellant took no action on appellee's plan until November 23, 1965, which was its first regular meeting after the passage of 60 days from the appellant's receipt of the plan, notwithstanding that on several occasions subsequent to September 17, 1965, appellee requested the appellant to either approve or disapprove its plan. At the November 23rd meeting the plan was disapproved.

On December 3, 1965, appellee filed a petition in the Circuit Court for Montgomery County for a writ of mandamus and an injunction to direct the appellant to approve its preliminary plan. The court issued a show cause order on January 5, 1966. The appellee thereafter filed its answer and a hearing on the show

cause order was held on January 26, 1966. The hearing consisted entirely of argument of counsel and the only evidence received was the applicable statutes and ordinances. On April 20, 1966, the court issued a writ of mandamus commanding the appellant to approve the appellee's preliminary subdivision plan on the ground that by virtue of Ch. 815, § 71 (b) of the Acts of the General Assembly of 1963, hereinafter referred to as Ch. 815, the appellant approved appellee's plan by failure to either approve or disapprove it within 60 days of its submission to the appellee, but instead acted at its first regular meeting after the expiration of 60 days after the plan was received.

On appeal it is appellant's contention that Ch. 815 [1] is "a

---

1. "AN ACT to repeal and re-enact, with amendments, Section 71 (a) and 71 (b) of Chapter 780 of the Acts of 1959, as amended by Chapter 452 of the Acts of 1961, * * *, providing for a method by which subdivision regulations of the Commission *may* become effective if on presentation the governing body takes no action, and providing for limitation of the time allowed to reserve land for public purposes * * *, and providing for approval or disapproval of preliminary plats within sixty (60) days after application. (Emphasis supplied.)

* * *

"71

(b) The regulations may include provisions as to the extent and manner in which (1) roads shall be graded and improved; (2) curbs, gutters, and sidewalks shall be built; (3) water, sewer, and other utility mains, piping, connections, and other facilities shall be installed; and (4) trees shall be planted or conserved as a condition precedent to the approval of a plat. The regulations or practice of the Commission may provide for the tentative approval of a plat previous to such improvements and installation; * * *. In lieu of the completion of such improvements prior to the approval of the plat, the Commission or County may accept a bond with surety to secure the actual construction * * *. The regulations or practice of the Commission may provide for a preapplication procedure and also for submission of a preliminary plat prior to submission of a final plat of subdivision and for tentative or conditional approval *or disapproval* of such preliminary plats within [a reasonable time.] *sixty (60) days after submission thereof; otherwise, the preliminary plat shall be deemed to have been approved and a certificate to that effect shall be issued by the Commission upon demand. The applicant for the Commission's approval may waive this requirement and consent to the extension of such period. The ground of disapproval of any such*

clear, unambiguous enabling statute," and "that the lower court erred when it construed Ch. 815 in such a way as to put it in conflict with § 104-24 (e)," [2] Mont. Co. Code (1965) (Ord. 4-115, §1, Laws of Mont. Co. 1962, adopted Oct. 17, 1961), hereinafter referred to as the local ordinance.

The lower court in its opinion stated the following conclusions:

> "That the use of the word 'may' in this statute [Ch. 815] is mandatory and whether or not the County Council chose to enact it into local law, the act was binding upon the Montgomery County Planning Board. The Court finds that the petitioner herein had a legal right to require approval of its preliminary plan where it was not acted upon within the sixty (60) day period required by Chapter 815 of the Laws of Maryland of 1963 inasmuch as the petitioner did not waive this requirement."

We do not agree with the interpretation given Ch. 815 by the lower court nor do we believe the local ordinance to be in conflict with it.

This Court has not infrequently been called upon to construe the legal effect of a public general law and a local law which both treat upon subject matters which are germane, and which because of an alleged ambiguity in the language employed are in seeming conflict with each other. See *Groh v. County Commissioners of Washington Co.,* 245 Md. 441, 226 A. 2d 264 (1967) at p. 267 and cases cited therein.

---

*plat shall be stated upon the records of the Commission, and a copy of such record shall be mailed postage prepaid to the last address of record of the applicant."* (Italics indicate new matter added to existing law; [Brackets] indicate matter stricken from existing law.)

**2.** "(e) *Presentation of plan to board.* Every preliminary plan shall be presented to the board for its review and action at the earliest regular meeting after the staff has completed its study and is ready to make its recommendation to the board, together with a report of all other recommendations or communications received concerning such plan; *provided, that the staff shall present the plat to the board not later than the first regular meeting which occurs after sixty days have elapsed from date of receipt of such plan, plus an extension of time granted for review by other agencies. * * * ."* (Emphasis supplied.)

The lower court in its opinion interpreted Ch. 815, a public general law, as self-executing in its effect, and the word "may," as used in what it termed the preamble of the Act, as mandatory and not permissive.

The lower court in its opinion stated:

> "The Court is also aware of the fact that recitals merely express the legislative motive and its view of the public need for legislation and they may be referred to under some circumstances in the aid of construction of an act but form no part of the act itself, for the preamble cannot control the clear language of the operative provisions of an unambiguous legislative enactment."

The Court is constrained to point out that the pivotal word "may" is used not in the preamble of the Act, but in the titling of the Act. (Indeed Ch. 815 has no preamble.) This is a basic distinction of which we should not lose sight, as was noted by this Court in *Clark's Brooklyn Park, Inc. v. Joyce A. Hranicka and Joan P. Kopasek, et vir,* 246 Md. 178, 227 A. 2d 726 (1967).

The lower court further reasoned that Ch. 815 being a public general law, which it found to be in conflict with the local ordinance, the principle of statutory construction contained in Art. XI-A § 3 of the Constitution of the State of Maryland [3] should apply to the effect that the local ordinance is invalid to the extent of such conflict.

The appellant, in support of its contention that Ch. 815 is in substance an enabling Act, argues that Ch. 815 was enacted for the purpose of authorizing the Montgomery County Council to enact a subdivision ordinance and to establish, should it so choose, certain regulations permitted by the Act. To achieve this

---

**3.** "All such local laws enacted by the Mayor of Baltimore and City Council of the City of Baltimore or the Council of the Counties as hereinbefore provided, shall be subject to the same rules of interpretation as those now applicable to the Public Local Laws of this State, except that in case of any conflict between said local law and any Public General Law now or hereafter enacted the Public General Law shall control. * * *."

end, Ch. 815 repealed and re-enacted with amendments §§ 71 (a) and 71 (b) of the Maryland-Washington Regional District Act (Ch. 780, Acts of 1959, as amended by Ch. 815, Acts of 1963).

The appellant, urging upon us a harmonious construction of the two laws, argued that the word "may," as used in Ch. 815, was used as a word with an intended precise meaning throughout §§ 71 (a) and 71 (b) to connote permissive authority rather than mandatory action. The appellant further invited comparison of the language employed in § 71 with that used in § 72 of the Maryland-Washington Regional District Act. This latter section, which pertains to the approval or disapproval of the subdivision plat, as distinguished from the tentative or preliminary plat, commences with the imperative language: "The Commissioner shall approve * * *."

We are of the opinion that the appellant is correct in its contention that the language of Ch. 815 is clear and unambiguous and the word "may," as used therein is to be construed in the permissive sense.

In reading Ch. 815 we think it is clear that the Legislature, by this Act, intended to grant authority to the Montgomery County Council whereby it could, if it so chose, provide regulations for a preapplication procedure for those desirous of developing real estate subdivisions and a tentative approval of preliminary subdivision plats. Also, if it so chose, to enact regulations requiring the Planning Board to approve such preliminary plats wthin sixty days from its submission for action, otherwise, the preliminary plat would be deemed to have been approved and a certificate to that effect would be issued by the Planning Board upon demand.

As viewed in this light Ch. 815 is an enabling Act and the language employed in its writing persuades us that such was intended. First, in the titling of the Act the word "may" is used, instead of the imperative "shall." Second, we find it used repeatedly in the body of the Act, and viewed in its context, we believe that the Legislature intended "may" to be used in its natural meaning. Thus construed it gives a permissive thrust to Ch. 815. An interpretation that its meaning is intended as permissive becomes manifest when the character of the regu-

lations for which the Act provides are analyzed. In § 71 (b) of Ch. 815, we find the word "may" to be used in conjunction with regulations providing for: (1) the grading and improvement of roads; (2) installation of utilities; (3) planting of trees and their conservation; (4) posting of performance bond ("the Commission or County may accept a bond with surety to secure the actual construction and installation of such improvements * * *.") ; and finally regulations regarding the submission of preliminary plats, concerning which the following language is employed:

> "The regulations or practice of the Commission may provide for a preapplication procedure and also for submission of a preliminary plat prior to submission of a final plat of subdivision and for tentative or conditional approval *or disapproval* of such preliminary plats within [a reasonable time.] *sixty (60) days after submission thereof; otherwise, the preliminary plat shall be deemed to have been approved and a certificate to that effect shall be issued by the Commission upon demand. The applicant for the Commission's approval may waive this requirement and consent to the extension of such period.* * * *." (Italics indicate new matter added to existing law.)

Certainly, it would be frivolous to contend that all of the above enumerated provisions of § 71 (b) are intended to be mandatory and it is equally as frivolous to contend that only the regulation for preliminary plats was singled out for mandatory effect. Also, in reading § 71 (b) in its entirety, it becomes incongruous to interpret the provision pertaining to the filing of a preliminary plat as being inherently a default statute. Cf. *Mahopac Isle Inc. v. Agar,* 239 N. Y. S. 2d 614 (Sup. Ct. 1963).

Appellee makes much of the fact that there are times, while pursuing the legal charade of statutory construction, when the word "may" is given a mandatory meaning. We are well aware that there is law to the effect that permissive terminology under given circumstances should be interpreted as mandatory and again that under given circumstances mandatory terminology is properly interpreted as permissive, 50 Am. Jur. *Stat-*

*utes* §§ 31 & 32 (1944) ; 82 C.J.S. *Statutes* 380 a (1953). The answer as to its ("may") proper construction can only be found in viewing it in the context in which it is used.

In *Fleishman v. Kremer,* 179 Md. 536, 20 A. 2d 169, this Court in construing Art. 93, § 296 Code (1939), in a case involving among other issues the revocation of letters testamentary and the construction to be given to the word "may," said at pp. 540-41.:

> "The appellant contends that the word 'may' in a statutory authority, and particularly that given the Orphans' Court in section 296 to revoke letters, is always to be construed as 'must,' or 'shall,' and that the Orphans' Court here was compelled to remove the executors if the sale was made without an order; but that is incorrect. * * *. The word bears its ordinary significance of permission unless the context of the purpose of the statute shows that it is meant to be imperative: 'only when the context or subject-matter compels such construction.' *Farmers' & Merchants' Bank v. Federal Reserve Bank,* 262 U. S. 649, 662, 43 S. Ct. 651, 652, 67 L. Ed. 1157; 30 A.L.R. 635; * * *."

We must not lose sight of the fact that the local ordinance had been enacted sometime prior to the passage of Ch. 815 and, in the Court's opinion, it was not necessary for the Montgomery County Council to amend existing legislation or enact any additional legislation on this matter if they did not so choose. It is also a primary rule of statutory construction that a legislature has full knowledge of existing laws and legislation pertaining to the subject matter under legislative consideration, *St. Joseph Hospital v. Quinn,* 241 Md. 371, 379, 216 A. 2d 732, 736, (1966). We do not believe that the Legislature by passing Ch. 815 intended any *pro tanto* or partial repeal by implication of the local ordinance. Certainly, if the Legislature had had such repeal by implication in mind, knowing that repeal by implication is never favored by the Court and language expressing a clear intent to effect such repeal is necessary, would have employed different language than that found in Ch. 815.

*Renz v. Bonfield Holding Co.,* 223 Md. 34, 45, 161 A. 2d 436, 437 (1960); *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 55-56, 106 A. 2d 103, 107 (1954); *Garitee v. Baltimore,* 53 Md. 422, 435 (1880).

Because this Court is of the opinion that the permissive character of Ch. 815 is expressed clearly and unambiguously it is unnecessary to devote further time recapitulating other rules of statutory construction available to uphold the harmonious construction of these two laws, which are *pari materia.*

The Court wishes to make it clear that it is not expressing any opinion as to the merits of the appellant's action in ultimately disapproving the appellee's preliminary plan of subdivision and the reasons given therefore, set forth in the letter of November 30, 1966 of John J. Broda, Planning Engineer to Hanson & Associates, engineers, representing the appellees.

In view of the conclusions already reached in this matter, it is unnecessary for the Court to consider the procedural questions presented by the appellant.

*Order reversed, appellee to pay the costs.*