**John C. WEBBER, Sr., Plaintiff,**

v.

**Stan SKOKO et al., Defendants.**

**Civ. No. 76–564.**

United States District Court,
D. Oregon.

May 5, 1977.

John C. Webber, Sr., pro se.

Keith Kinsman, Asst. County Counsel, Oregon City, Or., for defendants.

BELLONI, District Judge:

Plaintiff John C. Webber, Sr. (Webber), appearing *pro se*, sues the members of the Board of County Commissioners (commissioners) and the Planning Commission (commission) of Clackamas County, Oregon, for alleged violations of his civil rights. Webber proceeds directly under the constitution—primarily the fifth, thirteenth and fourteenth amendments—and bases jurisdiction on 28 U.S.C. § 1331.[1]

Defendants now urge the court to abstain.

## I

Simply stated, plaintiff is unhappy with the zoning regulations of Clackamas County. In 1960, the commissioners zoned plain-

tiff's land on Pete's Mountain to allow one dwelling per half acre. In the hope of eventually selling the Pete's Mountain property as a residential development, Webber built a water system to service the future dwellings at a cost allegedly in excess of $100,000.

In 1974, however, the zoning was changed pursuant to Oregon's then new Comprehensive Land Use Statute.[2] This change resulted in Webber's Pete's Mountain property being zoned to allow only one dwelling per *five* acres, although (Webber alleges) neighboring property is still zoned to one dwelling per half-acre.

Plaintiff contends that the zoning change makes the property too expensive for residential development. His second amended complaint,[3] in legal effect, alleges that the commissioners and commission have deprived him of property without due process of law and the equal protection of the laws in contravention of the fifth and fourteenth amendments. He asks the court to enjoin the further enforcement of the subject county zoning ordinance.

## II

As developed in note 3, on March 2, 1977, I approved Magistrate Leavy's findings and recommendation which denied the defendant's motion to dismiss. Defendants now move to vacate and reconsider that decision.

---

1. See *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Gray v. Union County Intermediate Education District*, 520 F.2d 803 (1975).

2. See ORS 215.050, *et seq.*

3. Plaintiff filed his original complaint which sought money damages on June 22, 1976. On September 13, 1976, Governor Straub was dismissed from the action and the complaint was dismissed as to the remaining defendants for want of specific factual allegations. Plaintiff was given leave to file an amended complaint within 30 days.

Plaintiff did amend his complaint in September—twice. He filed an amended complaint on September 7 and another on September 20. On October 12, Magistrate Juba heard defendants' second motions to dismiss and orally notified the parties that he was again dismissing

plaintiff's complaint[s] with leave to amend. The clerk made a minute entry to this effect. The recommendation and Judge Solomon's November 8 order, however, dismissed the action instead of the September complaint[s].

On January 25, 1977, I vacated the November 8 order because it had erroneously dismissed the action.

Defendants again moved to dismiss—this time attacking plaintiff's November 1 complaint which had been filed in response to Magistrate Juba's October 12 leave to amend. On February 3, Magistrate Leavy recommended the dismissal of Governor Straub and the State of Oregon from the November 1 complaint, but denial of defendants' motion to dismiss the other defendants. I approved Magistrate Leavy's findings and recommendation by order dated March 2, 1977. The defendants now move for reconsideration of the March 2 order.

They contend that this court should abstain, citing *Qualls v. Fresno County Board of Supervisors*, 549 F.2d 808 (table) (9th Cir. 1977), an unpublished memorandum.

■ In keeping with the spirit of the Ninth Circuit's own rules, I will not rely upon an unpublished memorandum.

■ Further research has convinced me, however, that abstention is appropriate. There exists Ninth Circuit precedent for abstention in a factual context more closely analogous than *Qualls*. *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092 (9th Cir. 1976).

### III

*Rancho Palos Verdes* also involved farming land, Sycamore Hills,[4] which was zoned to permit high density development when it was annexed to the city of Laguna Beach, California, in 1966. As here, the relevant governmental entity, the city, allegedly changed its plans with regard to Sycamore Hills subsequent to the annexation, thereby precluding any development whatsoever.[5] The would-be-developer plaintiff sued the responsible municipal officials for violation of its constitutional rights,[6] and relied primarily upon the equal protection and due process clauses of the fourteenth amendment.[7] California, like Oregon, has passed a comprehensive land use planning statute which requires counties and cities to adopt general plans.[8] The Ninth Circuit affirmed the district court's abstention.

4. Sycamore Hills is 522 acres of grazing land which, at the time of its annexation, was located in the unincorporated area of Orange County, California.

5. Plaintiff alleged that the city desired to ultimately make Sycamore Hills into a park.

6. Rancho Palos Verdes plead claims under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

7. The complaint also included claims under the California constitution and for breach of contract.

### IV

■ The abstention doctrine is an exceptional mechanism which federal courts utilize to refrain from unnecessarily deciding constitutional issues. It is justifiable and it is necessary because it satisfies "the exigent demands of federalism." Wright, *Law of Federal Courts* 220 (1976).

Abstention falls into three general categories: (a) *Pullman*-type abstention;[9] (b) *Burford*-type abstention;[10] and (c) *Younger*-type abstention.[11] The categories are concisely yet fully explained by Justice Brennan in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813–17, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

### V

■ This case involves only *Pullman* abstention. *Pullman* abstention demands that

> when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.

*Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). The Ninth Circuit, in *Canton v. Spokane School Dist., No. 8*, 498 F.2d 840, 845 (9th Cir. 1974), interpreted *Pullman* abstention to require the presence of three factors:

> (1) The complaint "touches a sensitive area of social policy upon which federal courts ought not to enter unless no alternative to its adjudication is open."

8. See Cal.Gov.Code § 65100, *et seq.* (West Supp. 1976). The legislation is summarized in *Selby Realty Co. v. City of San Buenaventura*, 10 Cal.3d 110, 109 Cal.Rptr. 799, 514 P.2d 111 (1973).

9. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

10. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

11. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

(2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."

(3) The possibly determinative issue of state law is doubtful.

Quoting *Pullman, supra,* 312 U.S. at 498–99, 61 S.Ct. 643; see *Rancho Palos Verdes,* at 1094.

All three factors clearly are present here:

A. *Sensitive Area of Social Policy.* The complaint involves land use planning. As noted in *Rancho Palos Verdes,* an

> array of state constitutional provisions and statutes demonstrate that this is today a sensitive area of social policy . . . one upon which federal courts ought not to enter unless no alternative to its adjudication is open.

*Rancho Palos Verdes* at 1094. Oregon, like California, is "attempting to grapple with difficult land use problems through new policies and new mechanisms of regulation," and is also "struggling . . . with . . . problem[s] in those cases where . . . [cities and counties] may unwittingly have [seized] property rights they did not intend. . . ." *Rancho Palos Verdes,* at 1095. In short, "[f]ederal courts must be wary of intervention that will stifle innovative state efforts to find solutions to complex social problems." *Rancho Palos Verdes,* at 1095.

B. *Avoidance of the Constitutional Ruling.* Plaintiff's complaint attempts to confine itself to federal questions by alleging due process and equal protection violations. It is elementary, however, that such allegations always depend upon underlying questions of state law—what property rights, *as defined by state law,* are involved?[12] An equal protection case of course turns upon

the question of whether or not rights bestowed by state law have been selectively violated. Similarly, since state law defines the property interest involved and its dimensions, then, to that extent, state law will tend to determine whether and to what extent due process rights may attach.

If the state questions regarding plaintiff's alleged property rights are decided in his favor, then the state court might grant the desired or appropriate relief, thus terminating the controversy and avoiding adjudication of the federal constitutional question.

C. *Doubtful Nature of State Law.* The Oregon Legislature passed the Comprehensive Land Use Statute in 1973, effective in 1974—it's quite new. Oregon courts are still deciding to what extent the state and its municipalities may limit the development of private property, and what procedures are to be followed in enacting such limitations.[13] In fact, a perusal of the noted Oregon cases probably will yield more confusion than coherence.

Webber's rights under state law are unclear. The issues of state law involved are, at the least, quite doubtful.

Accordingly, I find that this court should abstain. Let plaintiff repair to the state courts.

IT IS ORDERED that this action is stayed for 90 days in which time plaintiff may petition the state court for relief. At the end of the 90 day period, depending upon plaintiff's action in the interim, I will entertain a petition for a further stay.

12. *See Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

13. *See, e. g., Green v. Hayward,* 275 Or. 693, 552 P.2d 815 (1976); *Baker v. City of Milwaukie,* 271 Or. 500, 533 P.2d 772 (1975); *Fasano v. Washington Co. Comm'n,* 264 Or. 574, 507 P.2d 23 (1973); *Fifth Avenue Corp. v. Washington County,* 28 Or.App. 485, 560 P.2d 656 (1977); *Desler v. Lane County Board of Comm'rs,* 27 Or.App. 709, 557 P.2d 52 (1976); *South of Sunnyside Neighborhood League v. Board of Comm'rs of Clackamas County,* 27 Or.App. 647, 557 P.2d 1375 (1976); *Pohrman v. Klamath County Comm'rs,* 25 Or.App. 613, 550 P.2d 1236 (1976); *Allison v. Washington County,* 24 Or.App. 571, 548 P.2d 188 (1976) (*en banc*); *Kristensen v. City of Eugene Planning Comm'n,* 24 Or.App. 131, 544 P.2d 591 (1976).