671 F.2d 743
 HERITAGE FARMS, INC., Heritage Farm Partnership, Concept
Plus, Inc., and Michael G. Lamelza, Appellants,
v.
SOLEBURY TOWNSHIP, Solebury Township Board of Supervisors,
J. Walter Livezey, Jr., Frank J. Soriero, Jr., Patricia D.
Knight, Individually and in Their Respective Official
Capacities as Members of the Solebury Township Board of
Supervisors, Carl L. Lindsay, Jr., Individually and In His
Official Capacity as Solicitor of Solebury Township, and
William E. Moon, Appellees.
 No. 81-1234.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 19, 1981.
Decided Feb. 10, 1982.
 
 Steven L. Friedman (argued), Louis B. Kupperman, Thomas J. Elliott, Philadelphia, Pa., for appellants.
 Franklin Poul (argued), Brian P. Flaherty, Stephen B. Harris, Edward J. Marcantonio, Philadelphia, Pa., for appellees.
 Before GIBBONS and HIGGINBOTHAM, Circuit Judges, and MEANOR, District Judge.*OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 I.
 
 1
 In this case, we are asked to examine the doctrine of abstention in a rather novel factual setting. For the reasons set forth below, we hold that the district court's decision to abstain was error and therefore the judgment of the district court must be reversed.
 
 
 2
 The appellants, plaintiffs below, are in the business of purchasing land and developing it into residential housing units in Solebury Township, Bucks County, Pennsylvania. The defendants include Solebury Township, its Board of Supervisors, past and present members of the Board, and the Township Solicitor. The plaintiffs brought suit on June 23, 1980 seeking declaratory and injunctive relief as well as damages for alleged violations of their constitutional rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1976).[1] Because a dismissal (without retention of jurisdiction) on abstention grounds is in the nature of a dismissal under Fed.R.Civ.P. 12(b)(6), Insurance Federation of Pennsylvania, Inc. v. Supreme Court of Pennsylvania, 669 F.2d 112 at 113 (3d Cir. 1982), for purposes of this appeal we must accept as true the allegations contained in the plaintiffs' complaint.
 
 
 3
 The complaint alleges that the various defendants conspired to use their offices to cripple and destroy the plaintiffs' business. Their course of conduct, spanning almost three years, was aimed at preventing the plaintiffs from carrying out plans for various residential developments. The attack was waged on various fronts. The defendants unlawfully denied the necessary governmental approval for certain development projects. Building permits were denied despite the knowledge that the denial of the permits was unlawful under Township ordinances. Escrow monies were not released for work completed. Certificates of occupancy were refused for completed and approved developments. The complaint alleges with great specificity a number of "illegal, aribtrary, unreasonable, confiscatory, (and) discriminatory" acts on the part of the defendants "to frustrate, hinder, obstruct, delay and prevent development of plaintiffs' properties solely for the purpose of inflicting economic harm upon plaintiffs under the color of law." Plaintiffs' Complaint, P 38, 39(i). Individual defendants articulated a personal dislike for plaintiff Lamelza and stated their intent to "bankrupt" him and "put him out of business." In addition, defendant Boas attempted to block one of plaintiffs' commercial ventures in order to prevent competition with his own nearby retail store. As both a member of the Board of Supervisors and Police Commissioner, Boas ordered illegal, repetitive and harassing inspections of the plaintiffs' projects. Various defendants intentionally made false statements to financial institutions in an attempt to persuade them not to finance plaintiffs' projects. In addition to running the plaintiffs' credit rating, defendants mounted an adverse publicity campaign against plaintiffs using false and defamatory statements to curtail the plaintiffs' ability to sell their homes. As a result of the defendants' efforts, the plaintiffs suffered severe financial losses as projects were delayed and aborted. In addition, the plaintiffs have suffered injury to their reputation in the business and financial worlds, as well as in the eyes of the community as a whole.
 
 
 4
 All parties agree that the complaint states on its face a claim under § 1983, and that the district court had jurisdiction over the case. Nevertheless, the defendants asked the district court to abstain and dismiss the complaint. The district court granted the motion, relying upon the doctrines articulated in Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The plaintiffs appealed. We must consider whether it was error for the district court to have abstained where there does not exist an unsettled question of state law and where important state policies are not threatened by a decision by a federal court.
 
 II.
 
 5
 Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue. The doctrine was born out of a concern for the maintenance of our federal system; seeking to avoid unnecessary conflicts between the federal judiciary and state government. See Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 500-501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). However, the Supreme Court has recognized that abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S.Ct. 1060, 1062-63, 3 L.Ed.2d 1163 (1959). Consistent with its perception of abstention as the exception rather than the rule, the Supreme Court has recognized only three situations in which abstention is appropriate. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).
 
 
 6
 One of the three basic types of abstention has its roots in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Younger doctrine requires a district court to abstain where, absent bad faith, harassment, or a patently invalid state statute, the moving party is attempting to enjoin pending state criminal proceedings. 401 U.S. at 54, 91 S.Ct. at 755. Younger abstention has also been held to be appropriate in certain narrow quasi-criminal or non-criminal settings. See Huffman v. Pursue, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (nuisance); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (civil contempt); Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (state attempt to recover fraudulently obtained welfare benefits); Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state seeking custody of children).
 
 
 7
 The second type of abstention, Pullman abstention, may be invoked where there is an unsettled question of state law, the resolution of which would affect the decision of a federal constitutional issue, either by obviating the need to decide it or by changing the light in which it must be viewed. See Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941).
 
 
 8
 The final category-Burford abstention-derives its name from Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Burford abstention is appropriate where a difficult question of state law is presented which involves important state policies or administrative concerns. 319 U.S. at 332-34, 63 S.Ct. at 1106-07. In this situation, a federal court may abstain to avoid disrupting the efforts of a state "to establish a coherent policy with respect to a matter of substantial public concern." Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).
 
 III.
 
 9
 The district court did not rely upon Younger abstention, and it clearly has no applicablity to this case. The plaintiffs are not attempting to enjoin a pending state proceeding, either criminal or quasi-criminal, nor is there a pending state proceeding involving the precise claims or issues before us in this case.[2]
 
 A.
 
 10
 The district court did, however, find Pullman abstention applicable to the present case, explaining: "this dispute can be disposed of by a state court applying state law, thus avoiding a determination by this court of federal constitutional issues." Heritage Farms, Inc. v. Solebury Township, 507 F.Supp. 33, 35 (E.D.Pa.1980). Although the district court's observation tracked part of the Pullman test, the mere presence of a "potentially dispositive question of state law," 507 F.Supp. at 35, has never been a sufficient basis in itself for declining federal jurisdiction under Pullman. The doctrine requires that the question of state law be unsettled. See, e.g., Reetz v. Bozanich, 397 U.S. 82, 86, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970); Hill v. City of El Paso, 437 F.2d 352, 356 (5th Cir. 1971).
 
 
 11
 Neither the district court nor the defendants have pointed to the unsettled question or questions of state law presented by this case. As far as we can discern, there are none. Of course, state law will be involved in this suit, but Pullman abstention is certainly not designed to prevent a federal court from applying state law altogether. As one commentator observed: "Federal and state courts are equally capable of applying settled state law to a difficult set of facts." Note, Land Use Regulation, the Federal Courts and the Abstention Doctrine, 89 Yale L.J. 1134, 1143 n.55 (1980) (emphasis added). In Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court found Pullman abstention inapplicable in part because "(w)hile state claims are involved in the case, the state law appears to be settled." 424 U.S. at 815, 96 S.Ct. at 1245. To the extent that state law is involved in this case-for example, the law governing land use-it is settled state law, and, as such, Pullman abstention is inappropriate.
 
 B.
 
 12
 The district court also found Burford abstention applicable, pointing to the "traditionally local nature of land use decisions and the danger of unwarranted federal interference with such traditionally local functions." Heritage Farms, Inc. v. Solebury Township, 507 F.Supp. 33, 35-36 (E.D.Pa.1980). To resolve this issue, we must look to the regulation of land use in Pennsylvania.
 
 
 13
 In 1968, Pennsylvania enacted the Pennsylvania Municipalities Planning Code, Pa.Stat.Ann. tit. 53 § 10101 et seq. (Purdon's 1972). This Code embodies Pennsylvania's policies and general rules concerning municipal land development, delegating power to the municipalities to create planning commissions like the Solebury Township Board of Supervisors. These planning commissions direct land development and aid the governing body of the municipality in enacting ordinances, consistent with the provisions of the Code, covering zoning, building and housing codes and the like. See Pa.Stat.Ann. tit. 53 §§ 10201, 10209.1. Thus, there is no uniform state policy for land use and development-policies necessarily differ from municipality to municipality.
 
 
 14
 The Pennsylvania Municipalities Planning Code does not involve the type of uniform and elaborate statewide regulation as was adopted by the State of Texas to govern the drilling of oil wells in Burford. Furthermore, there is no danger that a federal court decision in this case will disrupt Pennsylvania's policies or plans with respect to land use. Here, as in Colorado River Water Conservation, "no questions bearing on state policy are presented for decision. Nor will decision of the state claims impair efforts to implement state policy as in Burford." 424 U.S. at 816, 96 S.Ct. at 1245. The policies embodied in the Municipalities Planning Code are not being attacked-it is rather the application of those policies by a single township that is at issue. In fact, if it is found that the defendants acted unlawfully, the state and local policies will be vindicated.
 
 
 15
 Perhaps most importantly, this case is not simply a land use case. Rather the plaintiffs have alleged that members of the Board have used their governmental offices to further an illegal conspiracy to destroy plaintiffs' constitutional rights to conduct a legitimate business. The Pennsylvania Municipalities Planning Code simply does not address such behavior. Nor do we think that defamation and attempting to persuade financial institutions not to lend to the appellants are simple matters of land use and development policy. In short, Burford abstention has no place in this case.
 
 
 16
 It should be noted that none of the major cases relied upon by defendants involve allegations of pervasive corruption and fraud. The high level of malevolent conduct in this case is quite different than the issue in Pullman as to whether a "sleeping car shall be operated ... (with a) Pullman conductor," Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 497, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941). Similarly, defendants' illicit conduct is quite different than the gravamen of the complaint in Burford, involving a "general regulatory system devised for the conservation of oil and gas in Texas, an aspect of 'as thorny a problem as has challenged the ingenuity and wisdom of legislatures.' " Burford v. Sun Oil Co., 319 U.S. 315, 318, 63 S.Ct. 1098, 1099, 87 L.Ed. 1424 (1943).
 
 
 17
 There have been cases where lower federal courts have abstained on either Pullman or Burford grounds, or both, when faced with a case involving land use issues. See generally, Note, Land Use Regulation, the Federal Courts, and the Abstention Doctrine, 89 Yale L.J. 1134 (1980). The district court relied upon one such case, Kent Island Joint Venture v. Smith, 452 F.Supp. 455 (D.Md.1978). In Kent Island a real estate developer alleged a conspiracy on the part of state and local officials to delay and destroy his development plans and asserted that the actions violated his constitutional rights. 452 F.Supp. at 456. However, Kent Island is readily distinguishable from the case before us. In Kent Island, the only acts at issue were governmental decisions on land use matters. There were no allegations, as there are here, that local government officials fraudulently acted under color of law for their own personal gain, to thwart those who would compete with their private business ventures. Nor did the defendants in Kent Island engage in the type of corrupt tactics of which plaintiffs accuse defendants.
 
 
 18
 We express no view on whether Kent Island is correctly decided although we agree with the comment that a district court is not a "state-wide Board of Zoning Appeals," see Kent Island, 452 F.Supp. at 464. However, the egregious conduct here-"coconspirators" using their public offices to prevent competition with their private business-makes Kent Island easily distinguishable on its facts. It is incumbent upon district courts, faced with a claim arising out of land use questions, to examine the facts carefully to determine what the essence of the claim is. If it is an unlawful conspiracy like the one alleged here, the mere presence of land use issues should not trigger a mechanical decision to abstain.
 
 
 19
 Since we conclude that abstention in this case is an abuse of discretion,[3] the judgment of the district court will be reversed and the matter will be remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 The plaintiffs also made claims based upon the Pennsylvania Constitution and various unspecified laws of the State of Pennsylvania.
 
 
 [2]
 There was a suit pending in the Bucks County Court of Common Pleas in which the appellee Township sued plaintiffs Lamelza and Heritage Farm Partnership as well as others not parties here. However, the issues there involved the completion of one of plaintiffs' projects and are substantially unrelated to the issues in this case. Additionally, plaintiffs' suit in federal court was not an attempt to enjoin these state court proceedings
 
 
 [3]
 All parties agree that the standard of review is "whether the District Court abused its discretion in abstaining ...." Brief for Appellants at 3; Brief for Appellees at iv