**Anthony M. VERDI, et al.**

v.

**CITY OF PHILADELPHIA, et al.**

**Civ. A. No. 82–1484.**

United States District Court,
E.D. Pennsylvania.

Dec. 22, 1982.

See also D.C., 545 F.Supp. 1297.

Richard M. Tiger, Philadelphia, Pa., for plaintiffs.

Gerald T. Clark, Asst. City Sol., Philadelphia, Pa., for City of Philadelphia.

John W. Walter, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for Liberty Demolition Corp.

## MEMORANDUM

GILES, District Judge.

This dispute arises out of the demolition of property located at 416 Federal Street allegedly without notice, compensation or due process of law. Defendants Liberty Demolition Corporation ("Liberty") and the City of Philadelphia ("City") move to dismiss the plaintiffs' amended complaint. For the reasons which follow, the motions are granted in part and denied in part.

## I. BACKGROUND

The property in controversy was owned by Anthony J. and Florence Verdi. In February of 1980, the City, acting through a building inspector, decided that the property was "imminently dangerous" and should be demolished in accordance with the Philadelphia Building Code, section 4–111(4). No notice of the proposed demolition was given, which is the alleged pattern or practice of which plaintiff complains. Pursuant to a contract with the City, Liberty was hired to and did demolish the property at 416 Federal Street on April 4, 1980.

Anthony M. Verdi, the owners' son, brought suit pursuant to 42 U.S.C. § 1983 (1976) for violations of both his own and his parents' due process rights under the Fifth and Fourteenth Amendments. The complaint stated that his parents had assigned to him their rights to sue as evidenced by an attached power of appointment. However, it was clear that he was suing in their behalf, as well as in his own, for his personal property which was located in the house.

An earlier motion to dismiss was granted on the grounds that plaintiff failed to allege a policy, custom, or practice of unconstitutional municipal behavior sufficient to satisfy the Supreme Court's mandate in *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). *See* Memorandum and Order of September 3, 1982. Plaintiff then filed an amended complaint with leave of court. In it, he named his parents as parties' plaintiff. Once again defendants move to dismiss on various grounds.

## II. DISCUSSION

In evaluating a motion to dismiss, the allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir.1980); *Empire Abrasive Equipment Co. v. H.H. Watson, Inc.*, 567 F.2d 554, 557 (3d Cir.1977).

### A. *Under Color of State Law*

Liberty moves to dismiss the entire complaint against it, alleging that it did not act under color of state law as required under 42 U.S.C. § 1983 (1976). Liberty argues that it is merely a private party in a contractual relationship and not a joint participant with the state. It is undisputed that Liberty exercised no decision-making power—the City was responsible for determining what was to be demolished, when and after what kind of notice, if any.

■ In order to be held liable under section 1983, the actions of private persons must be somehow attributable to the state. As the United States Supreme Court stated in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970);

> Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

398 U.S. at 152, 90 S.Ct. at 1605–06 (quoting *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966)). *See also Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir.1977).

■ In demolishing the premises, Liberty acted under contract at the City's direction pursuant to the Philadelphia Building Code. Liberty's actions are analogous to those of private parties who initiate pre-judgment attachment proceedings under state procedures which are alleged to be violative of due process. Although a private party might not actively deny another due process of law simply because an existing state procedure is invoked, the private person can be said to have acted under color of state law. *See Lugar v. Edmondson Oil Co., Inc.*, —— U.S. ——, 102 S.Ct. 2744, 2756–57, 73 L.Ed.2d 482 (1982). Similarly, Liberty did not decide to withhold notice and thus potentially violate plaintiffs' rights. Much like the defendant in *Lugar*, Liberty was simply following an existing procedure.

However, the deprivation in each case is the same; denial of property without notice and opportunity to be heard. Only the manner of deprivation differs. To the extent that these situations are parallel, the same result is dictated. As the Supreme Court stated in *Lugar;* "we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Lugar,* 102 S.Ct. at 2756. Therefore, I find that Liberty acted under color of state law.

In *Stypmann v. City and County of San Francisco,* 557 F.2d 1338 (9th Cir.1977), the Ninth Circuit reached the same conclusion in a factually analogous case. At issue was a provision of the California Vehicle Code authorizing police officers to have private vehicles removed from the streets without prior notice or a hearing. An officer could decide that a vehicle should be towed and call or engage a private towing company for the removal. The towing company could remove and detain the vehicle and assert a lien for towing charges. Thereafter, the officer would notify the owner of the disposition of the vehicle. This scheme was challenged under section 1983 as violative of due process. The court found the private towing company to be acting under color of state law as a "willful participant in a joint activity with the State or its agents." 557 F.2d at 1341 (quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966)). The private company had no decisionmaking power—the police officer was vested with that responsibility. It simply towed cars and charged the owners "pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws." *Id.* Similarly, Liberty did its job pursuant to a statutory framework and furthered the City's enforcement of housing regulations. Thus, I conclude, as did the court in *Stypmann,* that there is a "sufficiently close nexus between the State and the challenged action ..." to deem Liberty's actions as taken under color of law. *Id.* at 1342 (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). Thus, Liberty's motion to dismiss on this ground is denied.

**B.  *Failure to State a Cause of Action***

■ Defendants raise once again the failure of the amended complaint to allege a custom, policy or practice with respect to the demolition of private property without notice. Liberty also contends that the complaint fails to allege a civil rights violation with sufficient specificity. Because they are closely related, I will address both of these issues together.

Although it certainly is true that the Third Circuit requires specificity in the factual pleadings of a civil rights case, *see, e.g., Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922 (3d Cir.1976), the amended complaint satisfies this requirement. Paragraphs 17 through 21 set out the gravamen of the complaint. Specifically, when a property is deemed "imminently dangerous" it is the custom of the City to make no attempt to notify the owners, even where immediate action is not taken. Attached to the complaint is a copy of the Philadelphia Building Code, section 4–111. Subpart 4, which is applicable here, provides:

> Where the order to eliminate the dangerous condition is not obeyed or where the peril to life or property requires immediate action, the Department, in addition to invoking any other sanction or procedure, may eliminate the dangerous condition or contract with other persons for that purpose and with the approval of the Law Department, collect the costs from the owner by lien or otherwise.

On its face, this section applies only when the condition of the property requires immediate action. The complaint alleges that no notice was given to plaintiffs or placed on the property prior to the demolition, even though there was more than sufficient time for notification.[1] Additionally, this

---

1. As mentioned earlier, the determination of the dangerous condition was made in February of 1980 and the demolition did not occur until April 4 of that year. The lapse of over a month

behavior is alleged to be a common practice. Therefore, contends plaintiffs they were deprived of their property and personalty therein without due process of law.

I find that these allegations are sufficiently specific to state a cause of action under *Rotolo.* Moreover, the plaintiff has adequately alleged a policy or practice of unconstitutional behavior under *Monell* so as to survive a motion to dismiss.[2]

### C. Pendent State Claims

■ Defendants move to dismiss the pendent state claim for trespass on the grounds that the statute of limitations has run.[3] Plaintiff counters, alleging that a cause of action in trespass was contained in the original complaint. I disagree.

The original complaint was styled as a civil rights action—jurisdiction was alleged only under 28 U.S.C. § 1343(3). The complaint explicitly stated that the claims were brought pursuant to the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983 (1976).[4] However, a comparison with the amended complaint is most telling. Pendent jurisdiction is specifically invoked and the tort claim is clearly set out in a separate count. Simply put, there is absolutely no indication in the original complaint that it was anything other than a civil rights action.

■ Plaintiff maintains that the factual elements of a trespass action were contained in the original complaint. This may be true. However, this did not serve to place the other party on notice of that claim—and thereby accomplish the purpose of the "notice pleading" system of the Federal Rules of Civil Procedure. *See Lobianco v. Valley Forge Military Academy,* 224 F.Supp. 395, 400 (E.D.Pa.) *aff'd.* 331 F.2d 851 (3d Cir.1963). I find that the original complaint did not contain a trespass claim.

The court in *Harris v. Commonwealth of Pennsylvania,* 419 F.Supp. 10 (M.D.Pa.1976) faced a similar problem. Harris brought a Title VII suit alleging sexual discrimination in employment. The plaintiff amended her complaint to add, *inter alia,* a claim under the civil rights statutes arising out of the same alleged discrimination. The administrative proceedings before the EEOC resulted in a time lapse, causing the statute of limitations to run on the civil rights claim. Even though these claims were based upon the same alleged discrimination as the Title VII suit, the court held that the two actions were totally separate. The court stated: "neither does the Title VII claim in the first complaint toll the running of the applicable limitations periods [for the other claims] nor does inclusion of such actions in the amended complaint relate back to the initial complaint pursuant to F.R.C.P. 15(c)." 419 F.Supp. at 15. *Accord, Johnson v. Railway Express Agency,* 421 U.S. 454, 465–66, 95 S.Ct. 1716, 1722–23, 44 L.Ed.2d 295 (1975).

■ I find the *Harris* opinion to be controlling here. An action in trespass is very different from one under section 1983. The filing of a complaint in the latter in no manner tolls the statute of limitations in the former. Thus, the statute of limitations

---

belies the conclusion that the property was so dangerous so as to require immediate attention.

2. The original complaint in this case, which was dismissed for failure to allege a policy or practice of unconstitutional behavior, failed to allege that the City had engaged in similar behavior in the past.

3. It is well settled that since the civil rights statutes do not contain their own statute of limitations, the most nearly analogous state statute is applied. *See, e.g., Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Swietlowich v. Bucks County,* 610 F.2d 1157, 1162

(3d Cir.1979); *Henig v. Odorioso,* 385 F.2d 491, (3d Cir.1967), *cert. denied,* 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968). Defendants both point to Pennsylvania's two year statute of limitations for torts, Pa. Cons.Stat.Ann. tit. 42 § 5524 (Purdons Supp.1981). Since plaintiff has not rebutted its application, I will assume, without deciding, that it applies.

4. In the memorandum in response to the City's motion, plaintiffs make it clear that they are not asserting rights directly under the Constitution, but only under section 1983. As such, the City's motion to dismiss on this point is moot.

has run on plaintiff's pendent state claim and it shall be dismissed.[5]

### D. *Joinder of Anthony J. and Florence Verdi*

■ Both defendants object to the joinder of Anthony J. and Florence Verdi as parties plaintiff in the amended complaint. They argue that since the cause of action arose in April, 1980, the statute of limitations ran in April, 1982 and thus the Verdis would be barred from bringing suit at the present time. If they are barred from suing now, defendants reason that they should not be able to indirectly assert their rights in this action. Defendants' argument is without merit.

Rule 17(a) of the Federal Rules of Civil Procedure provides that; "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed . . . for . . . joinder or substitution of the real party in interest . . . ." Although the original plaintiff did purport to be the assignee of his parents' rights, no one would dispute the fact that the Verdis, as the record owners, are the real parties in interest with respect to the house.[6] Thus, to prohibit the joinder of the Verdis would be contrary to both the language and spirit of Rule 17.[7] Additionally, Rule 17(a), which contains its own "relation-back" provision, provides that the "joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Therefore, under Rule 17, joinder of the Verdis is appropriate.

Nor will the joinder prejudice the defendants in any way. As Wright and Miller noted:

> As long as defendant is fully apprised of a claim arising from specific conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense.

6 C. Wright and A. Miller, Federal Practice and Procedure § 1501 at 524 (1971). Here, the claims of the new plaintiffs are identical to those in the original complaint—the very same conduct is at issue. Moreover, the original complaint alleged that Anthony M. Verdi was prosecuting the claim on behalf of himself and his parents. Paragraph 3 of the complaint stated that he had been assigned the rights of his parents, which was evidenced by an attached power of attorney. Therefore, defendants' motions to dismiss the claims of the owners of the real property are denied.

### E. *Abstention and Exhaustion*

■ In its memorandum of law, Liberty raises the doctrines of abstention and exhaustion in the section 1983 context. Although it candidly and correctly admits that exhaustion is not required, *see Patsy v. Board of Regents of the State of Florida,* —— U.S. ——, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982); *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), a vague suggestion is made that a federal court should abstain where there is a speedy and adequate remedy in the state court for the violation of state statutes. *See* Memorandum in Support of Mo-

---

**5.** Since I am dismissing the state claim, plaintiffs' claim for punitive damages shall also be dismissed. Plaintiffs recognize that *City of Newport, et al. v. Facts Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) precludes them from recovering punitive damages against a municipality in a section 1983 suit. Therefore, they are basing their punitive damages claim on the state count which I have just dismissed.

**6.** Liberty almost concedes this point in arguing that Anthony M. Verdi has no standing to assert the claims of his parents. Although this

point is moot given my decision to allow joinder of the Verdis, the original plaintiff is a real party in interest as regards his personal property which was left in the house. I express no opinion on whether the original plaintiff as assignee of his parents' rights, qualified as a real party in interest under Rule 17.

**7.** Ironically, the purpose behind Rule 17 is to protect defendants against subsequent actions prosecuted by the real party in interest. *See* Advisory Committee Notes accompanying Rule 17. Here, the defendants apparently object to this protective mechanism.

tion to Dismiss at 8–9. However, Liberty fails to cite any support for this proposition or to even mention what kind of abstention it claims is appropriate. Since there is no pending state criminal or quasi-criminal prosecution, *Younger* abstention is obviously inappropriate. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Nor has Liberty pointed to an unsettled question of state law, resolution of which might obviate the need to decide constitutional issues. Hence abstention under the rule in *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) is inapposite. Finally, Liberty has failed to allege that "a difficult question of state law is presented which involves important state policies or administrative concerns," *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743, 746 (3d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982), so as to warrant application of *Burford* abstention. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In short, Liberty has failed to allege any factors which warrant any form of abstention.