**UNITED STATES of America**

**v.**

**CONGOLEUM CORPORATION.**

**Civ. A. No. 86–0028.**

United States District Court, E.D. Pennsylvania.

April 30, 1986.

Edward S.G. Dennis, Jr., U.S. Atty., Margaret L. Hutchinson, Asst. U.S. Atty., Philadelphia, Pa., Douglas A. Johns, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

J. Freedley Hunsicker, Jr., Virginia Gibson-Mason, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendant Congoleum Corporation's motion to stay the above-captioned case. For the reasons stated herein, defendant's motion will be denied.

## THE STATUTORY AND REGULATORY FRAMEWORK

In order to set forth comprehensively the facts in this case, the court finds it necessary to review first the statutory and regulatory framework giving rise to plaintiff's complaint.

Congress has perceived rising levels of air pollution as a danger to the public health and, as a result, has enacted the Clean Air Act (the "Act"), 42 U.S.C. §§ 7401–7642 (1985). Under the Act, the Administrator of the Environmental Protection Agency (the "EPA") must promulgate air quality standards for various types of pollutants. 42 U.S.C. § 7409. The EPA's broad national standards are guidelines and goals to be adhered to by those who are covered by the Act.

Under the Act the states are required to draft a plan implementing the national standards, and must submit the plan to the EPA for approval. 42 U.S.C. §§ 7407, 7410. Although the states have the primary right to allocate in a plan the allocation of emissions limitations, the EPA has the ultimate power to disapprove the plan if the national standards are not met or if its scope is incomplete. 42 U.S.C. § 7410.[1]

After the plan is approved by the EPA, it may be enforced by the EPA or the state air pollution control agency, or both. In the case of a violation by a "person which is the owner or operator of a major stationary source," the EPA is the party that initiates a civil action for an injunction and civil penalties. 42 U.S.C. § 7413. In case of violations by other persons, the EPA or the state may enforce the state plan. 42 U.S.C. §§ 7413(b), 7416.

Pennsylvania, in compliance with the Act, has promulgated a state implementation plan ("SIP"). 25 Pa.Admin.Code § 121, *et seq.* Two sections in SIP are relevant in this case.[2] First, plaintiff asserts in its complaint that defendant violated 25 Pa.Admin.Code § 129.67 ("§ 129.67"). Section 129.67(a) states:

> This section applies to facilities whose retrogravure and flexographic printing presses by themselves or in combination with any surface coating operation emit volatile organic compounds into the outdoor atmosphere in quantities greater than 1000 pounds (460 kilograms) per day or 100 tons (90,900 kilograms) per year.

Section 129.67(a). Section 129.67 goes on to set the limitation on "facilities whose retrogravure and flexographic printing presses by themselves or in combination with any surface coating operation." Section 129.67(a).

Section 129.53 is the other relevant section. Defendant argues that, even if it is in violation of § 129.67, it is entitled to the more generous alternative standard of § 129.53, which is often referred to as a bubble. Section 129.53 provides that the Pennsylvania Department of Environmental Resources ("DER") may, at its discretion, "in an applicable operating permit, approve alternative standards to apply to a surface coating or graphic arts facility upon a showing by the owner" that a series of requirements are met. Section 129.53 goes on to list the requirements and state the emissions limitation.

Sections 129.67 and 129.53 were both approved by the EPA on January 19, 1983.

## FACTS

Defendant, a Pennsylvania corporation, manufactures resilient vinyl floor covering in its Marcus Hook facility, Delaware

---

**1.** The EPA has the power to promulgate implementation plans. 42 U.S.C. § 7410.

**2.** A third section, 25 Pa.Admin.Code § 129.52, is of interest here. Section 129.52 sets permissible limits on surface coating processes. Plaintiff does not allege that defendant, which operates surface coating processes, violated the constraints of this section.

County, Pennsylvania. In its operation defendant uses two rotogravure press lines for printing the vinyl floor covering. The inks used in defendant's printing process contain volatile organic compounds ("VOCs") and during the process the VOCs are emitted into the atmosphere. VOCs contribute to the formulation of ozone. At the Marcus Hook plant, defendant also operates four surface coating lines.

On October 19, 1981, defendant applied to the DER for approval of a bubble. That application, the court believes, was made under regulations which preceded the present sections 129.67 and 129.53. On December 28, 1983, after §§ 129.67 and 129.53 were promulgated and approved, the DER denied defendant's application for a bubble. The reason that the application was denied, according to defendant, was that, under internal DER policy, the § 129.-53 bubble did not apply to operations such as that of defendant. Defendant argues that nothing in the language of § 129.53 states that § 129.53 is inapplicable to defendant's operation.

Defendant appealed the denial of the bubble to the Pennsylvania Environmental Hearing Board ("PEHB"). On October 15, 1984, DER determined that defendant was in violation of § 129.67 and issued an air pollution abatement order (the "abatement order"). Defendant appealed the abatement order to the PEHB on November 15, 1984, and, shortly thereafter, the appeal of the denial of the bubble application and the appeal of the abatement order were consolidated before the PEHB.

On February 8, 1985, while the appeals were still pending before the PEHB, the DER rescinded the denial of the application for the bubble, and requested defendant to provide additional evidence. As a result, on that day, the appeal of the denial of the application for the bubble was dismissed as moot. The appeal of the abatement order remained before the PEHB.

Defendant provided the requested information and on June 14, 1985, defendant's bubble application was again denied by the DER. According to defendant, the reason for the denial was in DER's internal policy and was not found in the language of § 129.53. The June 14, 1985 denial was appealed on July 12, 1985. This appeal was subsequently consolidated with the appeal of the abatement order.

On January 3, 1986, plaintiff filed this action in the United States District Court for the Eastern District of Pennsylvania. Plaintiff alleges that defendant is in violation of § 129.67 and has been in violation of § 129.67 since April 21, 1984.

Meanwhile, on January 24, 1986, the DER filed a complaint against defendant before the PEHB. Consequently, presently pending before the PEHB are defendant's appeal from an abatement order, defendant's appeal from the June 14, 1985 denial of the bubble application, and DER's January 24, 1986 complaint.

On February 12, 1986, defendant moved in this court for a stay under both of the doctrines enunciated in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Defendant argues that the PEHB will construe § 129.53 when it decides the three appeals before it and that the PEHB interpretation of § 129.53 may obviate this court's need to decide difficult Constitutional issues or may alter the posture of those issues. In other words, if PEHB holds that DER may not consider its internal policies when applying § 129.53, this court will not have to decide whether § 129.53 is unconstitutionally vague or whether the internal policy violates equal protection because it targets the floor tile industry, or violates due process because it has never been enacted after a hearing.

In contrast, plaintiff argues that the state law here is not unsettled, this court will not have to decide any Constitutional issues, and the history of this case shows that the PEHB ruling cannot be said to be imminent.

## DISCUSSION

In moving this court to stay this proceeding, defendant asserts two doctrines. One of the doctrines was · enunciated in *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (the "Pullman doctrine"). *See Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743 (3d Cir.), *cert. denied,* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). Under the Pullman doctrine the federal district court may stay proceedings before it to avoid deciding sensitive Constitutional questions if the proceedings require that the court consider unsettled issues of state law and a state tribunal will resolve those issues of state law in the near future. The rationale behind the Pullman doctrine is that it is inappropriate for a federal district court to forecast state law where a state tribunal may shortly thereafter displace the federal court's rule. 312 U.S. at 500, 61 S.Ct. at 645.

The other doctrine upon which defendant relies is set forth in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (the "Colorado River doctrine"). The Colorado River doctrine, which is not an abstention doctrine, permits a federal district court to stay or dismiss an action pending before it in order to avoid duplicative, concurrent state litigation. In applying the doctrine the court must consider the conservation of judicial resources, the comprehensive disposition of the litigation, the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained, and whether state or federal law will provide the basis for the decision. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

With this background in mind, the court turns to the present case. In the course of its analysis the court considers both doctrines together, noting where necessary the distinctions between the doctrines.

▬ At the outset, defendant must show that there is an unsettled issue of state law. Defendant asserts that the law in question here is the SIP and that the SIP is state law. Defendant argues that SIP is state law because the state promulgated SIP and a state agency administers it. The court disagrees.

Before the EPA adopts the state's plan, the state is free, subject only to the provisions of the Act, to determine a mix of emission limitations. When the EPA approves the state plan, however, the plan is absorbed into federal law. The state may reconsider parts of the plan and prepare modifications and alterations, but those modifications and alterations are not part of the plan until they are approved by the EPA. Additionally, if a provision of the plan were subject to two possible interpretations, the interpretation given to the provision by the EPA is the proper interpretation. This is because the other interpretation was not approved by the EPA and did not properly become a provision of SIP. Consequently, SIP, after it is adopted by the EPA, is federal law.[3]

Further support for the holding that SIP, once approved by EPA, is federal law is found in the fact that the Act gives the federal district court subject matter jurisdiction over this case to enforce SIP. As jurisdiction of the federal court is not based on diversity of citizenship, it must be grounded on federal question jurisdiction. SIP, the regulations which EPA seeks to enforce, must be federal law.[4]

---

**3.** Also, the use of federal funding to finance the implementation of the Act evidences that SIP, once adopted by EPA, is federal law. The federal statutory scheme envisions the use of federal monies to assist the state agencies in promulgating and enforcing state plans.

**4.** Defendant, in making its present motion, relies heavily upon *United States v. Interlake,* 429

F.Supp. 193 (N.D.Ill.), *recon. denied,* 432 F.Supp. 985 (N.D.Ill.1977). This court finds that case unpersuasive. The *Interlake* court found that interpretation of the Illinois SIP was a matter of state law. According to that court, the EPA should defer to the state agencies' interpretation of the state plans as long as the interpretation is consistent with the Act because, under the Act, states have primary responsibility for the mix of

Even if SIP were state law, the court does not believe that any unsettled legal issues exist. Defendant argues that "[t]he question is unsettled because neither the PEHB nor the state judiciary has interpreted section 129.53 with reference to the internal policies upon which DER relied denying [defendant's] bubble application." Defendant's brief at 9. Regardless of the existence of DER's internal policies, however, as a matter of law, the only fair reading of SIP, applying the most rudimentary principles of statutory construction, is that § 129.53 does not provide a standard which is alternate to the § 129.67 standard.

It is a fundamental rule of construction that regulations will not be construed in such a way as to make some regulatory language unnecessary. Here, if the regulations were read as defendant contends, the court believes that the provision which applies generally to the emissions rate of surface coating and graphic arts facility, § 129.53, would swallow up the provision which applies specifically to emissions of volatile organic compounds into the outdoor atmosphere in quantities greater than 1,000 pounds (460 kilograms) per day or 100 tons (90,900 kilograms) per year by facilities with rotogravure and flexographic printing presses emitting VOCs by themselves or in combination with any surface coating operation. § 129.67. Thus, if defendant were correct, § 129.67 would be nugatory. Consequently, defendant cannot be correct. Section 129.53 cannot be an alternative to § 129.67. Whether or not DER has an internal policy, the interrelationship of § 129.53 and § 129.67 is clear and not unsettled.

Finally, even if defendant were correct that unsettled issues of state law were before the court, a stay would still be inappropriate here under either the Colorado River doctrine or the Pullman doctrine.

The appeals before the PEHB do not appear to be an item of high priority to the PEHB. They have been pending since November 15, 1984, and no decision is expected before the end of this year. After that decision is rendered, both parties have a right of appeal to the Commonwealth Court of Pennsylvania. Therefore, no authoritative decision by a state tribunal appears imminent.

CONCLUSION

Accordingly, defendant's motion for a stay will be denied.

---

emission limitations. Although the *Interlake* court is correct that states, when drafting and redrafting state plans, have primary responsibility over the mix of emission limitations, the state plan cannot be changed until the state has attained EPA approval. Once EPA approves the state plan, the plan becomes federal law. Any other result would be clearly incorrect. The Pennsylvania Constitution does not provide that a state agency can create state law without state legislative authorization. *See* Pa. Const. art. III. The Act does not purport to circumvent the state constitution and permit a state agency to legislate without direction by the state government.