843 F.2d 765
 Anthony IZZO, Appellant,
v.
BOROUGH OF RIVER EDGE; Planning Board of the Borough of
River Edge; Richard Fitzgerald; Mel Winge; William
Gillen; Phyllis Skae; Scott Cisternino; Thomas Crimmins;
Arnold Osmundsen; Barbara Graziano; Mayor Edward Raffo;
Mary Donohue; Joseph Synol; Estelle Gass; and Stephen Negri.
 No. 87-5523.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 20, 1988.
Decided April 7, 1988.
 
 Robert B. Cherry (argued), Totowa, N.J., for appellant.
 Bruce L. Safro, (argued), Chagaris & Safro, Hackensack, N.J., for appellees.
 Before GIBBONS, Chief Judge, and WEIS and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.[1]
 
 
 1
 A local zoning board refused to allow an amateur radio operator to extend the height of his transmission tower. He filed suit in the district court alleging both preemption by a Federal Communication Commission ruling and infringements of his constitutional rights. Citing state concerns in land use regulation, the district court abstained. We will remand for further proceedings because the presence of a federal interest requires the district court to adjudicate the case.
 
 
 2
 Plaintiff is an amateur radio operator licensed by the Federal Communications Commission. To increase the range of his broadcasts, he planned to install a forty-foot transmission tower in his backyard in the Borough of River Edge, New Jersey. Plaintiff applied to the borough planning board for a variance because the local zoning ordinance limits non-residential structures in the area to a height of thirty-five feet.
 
 
 3
 After hearing testimony, the board denied the variance, finding that the tower would diminish the privacy of neighboring residential properties and would increase the transmission range to only a limited extent. In addition, the plaintiff's evasiveness and failure to provide specific details about the structure led the board to doubt his credibility.
 
 
 4
 Plaintiff then filed a complaint in the district court, alleging constitutional violations and an invalid exercise of the borough's police powers. He sought injunctive relief, declaratory judgment, and damages. The suit named as defendants the Borough, its zoning officer, and twelve members of the planning board. Defendants moved to dismiss. Concerned about its jurisdiction, the court requested the parties to brief applicability of the abstention doctrine to the case.
 
 
 5
 After consideration of the submissions, the district court construed Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), to require abstention by federal courts when a suit constitutes an attack on comprehensive state regulatory or administrative systems. Following Burford, federal courts abstained in other cases challenging purely local land use planning ordinances. In the district court's view the controversy "involves no more than a dispute over local application of a local ordinance," and scrutiny by the federal courts "would result in needless federal-state friction."
 
 
 6
 Rejecting the plaintiff's contention that a 1985 memorandum opinion and order of the Federal Communications Commission was controlling, the court concluded "the FCC specifically did not preempt local regulations such as those at issue in this case." Accordingly, the defendant's motion to dismiss was granted.
 
 
 7
 On appeal, plaintiff presents three arguments--the FCC has preempted local regulation of the height of antennas; the municipality unlawfully burdens interstate commerce; and, the ordinance deprives the amateur operator of his freedom of speech. We consider only the first ground.
 
 I.
 
 8
 In Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the State of Texas had established a complex regulatory system for the drilling of wells in the East Texas oil fields. Under that scheme, administrative action was reviewable in the state courts of only one county in an effort to maintain uniformity of decision. Similar challenges also were filed in the federal district courts. After a period of years, it became clear that the regulatory system withstood federal constitutional scrutiny. See id. at 328-29 & n. 24, 63 S.Ct. at 1104-05 & n.24. Diversity jurisdiction being present, the federal courts were nonetheless called upon to pass on Texas law as interpreted by the state's own administrative agency. This dual jurisdiction produced inconsistent federal and state court constructions of the Texas scheme, at times serious enough to require special legislative sessions.
 
 
 9
 In those instances, the Supreme Court concluded that the "equitable discretion of the federal courts should be exercised to give the Texas courts the first opportunity to consider" the basic problems of that state's policy. Id. at 332, 63 S.Ct. at 1106. "Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand." Id. at 334, 63 S.Ct. at 1107.[2]
 
 
 10
 In a later case attacking a less complex regulatory scheme, the Court applied Burford abstention despite a railroad's assertion of a federal constitutional claim. See Alabama Pub. Serv. Comm'n v. Southern Ry., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). Resolution of the issue there depended "upon the predominantly local factor of public need for the service rendered." Id. at 347, 71 S.Ct. at 767.
 
 
 11
 Not long after Alabama Pub. Serv. Comm'n was decided, limitations on the abstention doctrine surfaced. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), held that a federal court should not refuse to decide a factual question determining whether a county properly could exercise the powers of eminent domain over specific property. Duly noting the teachings of Burford, the Court found "no hazard of disrupting federal-state relations." Id. at 189-90, 79 S.Ct. at 1063. The respondents did not ask the district court to apply "paramount federal law to prohibit state officials from carrying out state domestic policies, nor [did] they seek the obvious irritant to state-federal relations of an injunction against state officials." Id. However, in a condemnation case decided that same day, where state law assertedly was unsettled, the Court approved abstention. Louisiana Power and Light Company v. Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).
 
 
 12
 The Court revisited the abstention problem in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Discussing Burford, the Court said: "The reasonableness of the [drilling] permit in that case was not of transcendent importance, but review of reasonableness by the federal courts in that and future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields." Id. at 815, 96 S.Ct. at 1245.
 
 
 13
 As Colorado River makes clear, abstention is the exception, not the rule, and is justified only in the exceptional circumstance where the order guiding the parties to the state court "would clearly serve an important countervailing interest." Id. at 813, 96 S.Ct. at 1244 (quoting Mashuda, 360 U.S. at 188-89, 79 S.Ct. at 1062). See also Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743, 746 (3d Cir.1982) (State policy on local land use regulation not based on uniformity; consequently, Burford abstention inappropriate).
 
 
 14
 Moving from this cursory review of Burford complexities, we turn to the FCC order on which plaintiff here relies. To first put the regulation in perspective, we observe that "[f]ederal regulations have no less pre-emptive effect than federal statutes. Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily.... A preemptive regulation's force does not depend on express congressional authorization to displace state law...." Fidelity Sav. & Loan Ass'n v. De La Cuesta, 458 U.S. 141, 153-54, 102 S.Ct. 3014, 3022-23, 73 L.Ed.2d 664 (1982). See also United States v. Shimer, 367 U.S. 374, 381-83, 81 S.Ct. 1554, 1559-60, 6 L.Ed.2d 908 (1961).
 
 
 15
 The Federal Communications Act provides that the Commission "may ... make such rules and regulations, and issue such orders, not inconsistent with this chapter, as may be necessary in the execution of its functions." 47 U.S.C. Sec. 154(i). At the instance of the American Radio Relay League, after notice and comment procedures, the FCC issued a declaratory ruling on September 25, 1985. 50 Fed. Reg. 38813. The Commission recognized the strong federal interest in promoting amateur radio operations, particularly with respect to providing emergency communications. At the same time, the FCC acknowledged the important state interest reflected in local zoning ordinances, and concluded that "a limited preemption policy is warranted." Id. at 38816.
 
 
 16
 Because the effectiveness of radio communication depends on the height of antennas, local regulation of those structures could pose a direct conflict with federal objectives. The Commission did not "specify any particular minimum height limitation below which a local government may not regulate." Id. Nevertheless, the FCC said that ordinances "must be crafted to accommodate reasonably amateur communications" and to "represent the minimum practicable regulation to accomplish the local authority's legitimate purpose." Id. This balancing would include consideration of such matters as health, safety and aesthetics.
 
 
 17
 The Commission's order indicates an intent to apply a limited, rather than a total preemption. However, the order infuses into the proceedings a federal concern, a factor which distinguishes the case from a routine land use dispute having no such dimension. See Thernes v. City of Lakeside Park, 779 F.2d 1187 (6th Cir.1986). Cf. Guschke v. City of Oklahoma City, 763 F.2d 379 (10th Cir.1985) (pre-FCC declaratory ruling on preemption); Kroeger v. Stahl, 248 F.2d 121 (3d Cir.1957) (same).
 
 
 18
 The presence of a constitutional or other federal interest, however, is not necessarily dispositive in resolving a Burford abstention problem. For example, in Alabama Pub. Serv. Comm'n a constitutional issue was pressed and found not determinative of federal jurisdiction. We also recognize that in Burford, the alleged constitutional issue simply rehashed an argument already rejected by the federal courts on numerous occasions. From that standpoint, Burford was just a typical diversity case but one in which strong state policies were critical to the outcome.
 
 
 19
 It is fair to say, however, that in the years since Burford the presence of a federal issue has become a significant element in deciding whether a court should abstain. In Colorado River Water Conservation Dist., the Court, referring to Burford, noted that "the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention." 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21. In discussing the relevance of state interests, the Court said: "The potential conflict here, involving state claims and federal claims, would not be such as to impair impermissibly the State's effort to effect its policy respecting the allocation of state waters." Id. at 816, 96 S.Ct. at 1245.
 
 
 20
 The relatively minor nature of the state's concern was a factor in Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), where the Court commented, "[u]nlike Burford, however, this case does not involve complex issues of state law, resolution of which would be 'disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' ... And there is of course no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." Id. at 380 n. 5, 98 S.Ct. at 678 n. 5 (citation omitted).
 
 
 21
 If only state law applies, Burford abstention carries more weight than when federal interests require evaluation as well. One commentator suggests that, before a district court invokes Burford abstention in a case containing a federal issue, three conditions should be present: (1) the subject of the regulation be of significant and special concern to the state; (2) the state regulatory scheme be detailed and complex; (3) the federal issues be unresolvable without requiring the district court to immerse itself in the technicalities of the state's scheme. M. Redish, Federal Jurisdiction: Tension in the Allocation of Judicial Power 246 (1980). Although not dominant in Alabama Pub. Serv. Comm'n and Kaiser Steel Corp. v. W.S. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968), two cases where abstention was directed, those criteria reflect current philosophy in this developing area and provide a useful framework for analysis.
 
 
 22
 Concededly, a system of land use regulation may be of special interest to a state and a municipality; however, the scheme at hand does not approach the complexity of the one under scrutiny in Burford. The issue here is not so technical that it requires the district court to become enmeshed in a highly specialized area inconsistent with resolution of a relatively minor federal concern. Nor will the federal court's decision have a potentially far-reaching effect in the area of land use regulation. In contrast, the federal intrusion is very limited and unlikely to nullify any substantial portion of the regulatory program.
 
 
 23
 It has been proposed that Burford be restricted to state, rather than merely local, regulatory matters. But we see no need to explore this assertion now because other, more basic, considerations militate against abstention here. Cf. Heritage Farms, 671 F.2d at 743; Note, Land Use Regulation, the Federal Courts and the Abstention Doctrine, 89 Yale L.J. 1134 (1980).
 
 
 24
 In this case an express, narrow, and quite specific federal provision threatens, at most, only a minimal disruption of a broad state policy. The rationale of Burford is not apposite, and the general obligation of federal courts to retain jurisdiction of matters entrusted to them, particularly on matters of federal law, predominates.
 
 
 25
 We share the district court's sensitivity to the federal judiciary's traditional respect for local administration and control of land use regulation. Federal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to actions of municipalities. See Heritage Farms, 671 F.2d at 748.
 
 
 26
 Land use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong. See Fralin & Waldron v. City of Martinsville, 493 F.2d 481 (4th Cir.1974) (Clark, J.); Kent Island Joint Venture v. Smith, 452 F.Supp. 455 (D.Md.1978). Nevertheless, as we decided in Heritage Farms, the mere existence of land use regulation will not automatically mandate federal court abstention. The special circumstances here require that the district court retain jurisdiction and adjudicate this dispute. We express no view, of course, on the proper resolution of the controversy.
 
 
 27
 The order of the district court will be vacated, and the case will be remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 At the time of oral argument on this appeal, the Honorable Joseph F. Weis, Jr. was an active circuit judge. Judge Weis has since taken senior status
 
 
 [2]
 An interesting vignette on the disagreement between Justices Black and Frankfurter about the Burford decision appears in the Diaries of Felix Frankfurter 226-28 (Lash ed. 1975)